**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for the plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PENDLETON DIVISION

| | |
|---|---|
| **LILLITHIA MOON BLOOD-GAIA**, | Case No. 2:25-cv-00951 |
| Plaintiff, | **COMPLAINT** |
| v. | **(§ 1983; Title II of the ADA)** |
| **STATE OF OREGON** by and through Oregon Department of Corrections; **JAMIE MILLER; WILLIAM KING; JAMIE BREYMAN; JOE BUGHER; DEVARSHI BAJPAI; NICOLE MUHAMMAD-BROWN; ROBERT PERSSON; WARREN ROBERTS;** and **DOE DEFENDANTS 1–10,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PRELIMINARY STATEMENT

1.      This is a civil rights and disability discrimination action brought under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA), and Section 504 of the

PAGE 1 – COMPLAINT

Rehabilitation Act. Plaintiff Lillithia Moon Blood-Gaia is a transgender woman currently incarcerated in the custody of the Oregon Department of Corrections (ODOC). For over five years, ODOC officials have failed to protect her from known threats of violence, refused to provide her with medically necessary gender-affirming care, and discriminated against her based on her transgender identity and disability.

2.      Despite repeated diagnoses of gender dysphoria and recommendations from medical professionals—including ODOC's own contract surgeon—Plaintiff has been denied vaginoplasty and other essential treatments. She remains housed in a men's facility where she has been sexually assaulted, harassed, and retraumatized. ODOC's failure to act violates Plaintiff's rights under the Eighth and Fourteenth Amendments, as well as her statutory rights under the ADA and Rehabilitation Act.

3.      Plaintiff seeks declaratory and injunctive relief requiring ODOC to transfer her to a facility capable of safely housing transgender women and to provide timely access to gender-affirming surgery and related care. She also seeks compensatory and punitive damages for the constitutional and statutory violations she has endured.

**PARTIES**

4.      Plaintiff Lillithia Moon Blood-Gaia (formerly known as Nova June Gaia) is a transgender woman currently in the custody of the Oregon Department of Corrections (ODOC). She is housed at Snake River Correctional Institution (SRCI), a men's facility in Malheur County, Oregon. Plaintiff is a qualified individual with disabilities under the Americans with Disabilities Act and the Rehabilitation Act, including gender dysphoria, PTSD, and long COVID. She brings this action for violations of her rights under the Eighth and Fourteenth Amendments and related statutory provisions.

5. Defendant Oregon Department of Corrections (ODOC) is an agency of the State of Oregon responsible for the operation and management of the state prison system and for ensuring the medical care, safety, and civil rights of adults in custody. ODOC is a public entity within the meaning of Title II of the ADA and receives federal funding within the meaning of the Rehabilitation Act.

6. Defendant Jamie Miller is the Superintendent of SRCI. At all relevant times, Defendant Miller exercised supervisory control over facility-level decisions regarding Plaintiff's housing, safety, and access to healthcare. She had actual knowledge of Plaintiff's medical and safety needs and failed to take appropriate corrective action. She is sued in her individual capacity.

7. Defendant Captain William King was a correctional supervisor at SRCI responsible for housing placements. Despite repeated warnings and documented risks, he denied Plaintiff's requests for protective housing and threatened her with segregation when she refused unsafe placements. He is sued in his individual capacity.

8. Defendant Jamie Breyman was Chair of ODOC's Transgender Intersex Committee (TIC), responsible for oversight of housing, medical, and programmatic decisions for transgender AICs. Despite evidence of Plaintiff's risk and needs, she failed to implement necessary accommodations or escalate Plaintiff's case for appropriate review. She is sued in her individual capacity.

9. Defendant Joseph Bugher was ODOC's Health Services Administrator and a key official responsible for the implementation and oversight of ODOC's medical policies. He enforced ODOC's policy of denying gender-affirming procedures, including facial feminization,

and failed to take corrective action despite medical recommendations. He is sued in his individual capacity.

10. Defendant Devarshi Bajpai was a high-level behavioral health official involved in decisions and policies impacting access to mental health and gender-affirming care. He was responsible for the denial of PTSD treatment and failure to accommodate Plaintiff's diagnosed conditions. He is sued in his individual capacity.

11. Defendant Nicole Muhammad-Brown was involved in the evaluation and treatment decisions related to Plaintiff's gender dysphoria. Despite affirming her diagnosis, she failed to support medically necessary referrals for surgery and other care. She is sued in her individual capacity.

12. Defendant Robert Persson served on ODOC medical panels or acted in an administrative medical capacity during the relevant period. He failed to authorize or advance Plaintiff's access to gender-affirming surgery and was aware of but indifferent to the medical recommendations submitted on her behalf. He is sued in his individual capacity.

13. Defendant Dr. Warren Roberts was ODOC's Medical Director during the relevant time period and was responsible for final approval or denial of surgical and specialty care. He personally denied Plaintiff access to gender-affirming surgery and failed to follow ODOC's own medical experts' recommendations, amounting to deliberate indifference. He is sued in his individual capacity.

14. Doe Defendants 1–10 are ODOC officials, correctional staff, medical providers, or administrators whose identities are presently unknown but who personally participated in or failed to intervene in the violations described herein. Plaintiff will amend this Complaint to name these individuals once their identities are confirmed through discovery.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

16. This Court has supplemental jurisdiction over Plaintiff's state law claims, if any, pursuant to 28 U.S.C. § 1367.

17. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and Defendants are employed by the State of Oregon and reside in this District.

**STATEMENT OF FACTS**

18. Plaintiff is a transgender woman currently in the custody of the Oregon Department of Corrections (ODOC). She identifies as female, has a long history of treatment for gender dysphoria, and has presented as a woman throughout her incarceration.

19. Plaintiff entered ODOC custody in 2019. From the outset, ODOC staff were aware of her transgender status and diagnosis of gender dysphoria. Her PREA classification identified her as "potentially vulnerable." Despite this, ODOC classified her as male and housed her exclusively in male institutions, including Coffee Creek Correctional Facility (CCCF) and Snake River Correctional Institution (SRCI).

20. Beginning in 2020, Plaintiff submitted multiple grievances, medical kytes, and mental health requests documenting her gender dysphoria, requesting protective housing, and seeking access to gender-affirming care. On April 14, 2020, she reported being sexually harassed. In May 2020, she stated she feared going to the gym because of harassment. On July

20, 2021, she described sexualized comments from her 64-year-old cellmate. She requested transfer to a soft unit or Complex 1, designated for vulnerable AICs, but these requests were repeatedly denied.

21.     Captain King was responsible for housing placements but failed to document or act on known conflicts. On November 16, 2021, King placed a 60-year-old cisgender man in Plaintiff's cell. Less than two weeks later, on November 30, Plaintiff was assaulted—suffering a bloody nose, facial bruises, and elbow cuts. No incident report was filed. The cellmate was not removed until March 2022, and he was replaced by a 75-year-old man.

22.     In November 2021, Plaintiff's records and kytes documented escalating panic, suicidality, and reports that she was being targeted because of her appearance. She described experiencing hallucinations and severe anxiety related to being housed in an all-male unit. Despite repeated requests, ODOC took no protective action.

23.     Captain Breyman personally denied Plaintiff's request for protective housing in 2021 and again in 2022, even after medical staff documented worsening mental health and trauma symptoms. Jamie Miller, the Superintendent of SRCI, exercised supervisory authority over Plaintiff's housing, safety, and access to care during this period. Despite being informed of Plaintiff's repeated complaints and medical needs, Miller failed to intervene or modify her housing assignment, investigate her grievances, or ensure that medically necessary treatment was provided. even after medical staff documented worsening mental health and trauma symptoms. In March 2023, Plaintiff attempted self-harm after being celled with a person she had previously reported. She was returned to the same unit without any mental health follow-up or incident documentation.

24. In December 2021, therapist Dean Seright diagnosed Plaintiff with gender dysphoria and identified her as the target of adverse discrimination. He recommended a transfer to a women's facility. ODOC failed to act. In February 2022, Plaintiff filed a grievance demanding access to gender-affirming surgery. In March 2022, she formally submitted a request for vaginoplasty.

25. In May 2022, Plaintiff filed a state habeas corpus petition in Malheur County (Case No. 22CV41938) seeking an order requiring ODOC to provide her gender-affirming care. In December 2022, a contract surgeon evaluated Plaintiff and found vaginoplasty to be medically necessary.

26. In March 2023, the ODOC Transgender and Intersex Accommodation Committee (TAIC) reviewed her request and denied the surgery based on her disciplinary history and lack of community living experience—despite acknowledging that her gender dysphoria was severe. BHS and TIC members including Jamie Breyman, Nicole Muhammad-Brown, and Devarshi Bajpai participated in the denial, ignoring recommendations from qualified specialists.

27. In May 2023, Plaintiff filed a second habeas corpus petition (Case No. 24CV10812) seeking a renewed order for surgery. That petition went to trial in March 2025. As of the time of filing, the court has not yet issued a decision.

28. Robert Persson and Dr. Warren Roberts had final authority over surgical approvals. Joe Bugher, ODOC's Health Services Administrator, was responsible for oversight and implementation of ODOC's healthcare policies. He enforced or acquiesced in ODOC's policy of denying gender-affirming procedures, including facial feminization and other treatments recommended by ODOC's own medical consultants. Bugher was aware of Plaintiff's case and failed to take action to ensure compliance with ODOC's constitutional and statutory

PAGE 7 – COMPLAINT

obligations. Despite confirming the diagnosis and clinical need, they failed to approve vaginoplasty, facial feminization surgery, breast augmentation, or tracheal shave. ODOC staff—including King, Breyman, and Roberts—continued to treat her gender dysphoria as a disciplinary or administrative problem rather than a medical one.

29. In November 2023, Plaintiff was assaulted again by a cellmate who groped her. She reported the assault to ODOC staff, but the report was ignored. She was neither moved nor given access to protective housing, and no disciplinary action was taken against the aggressor. This failure to act further compounded the trauma she experienced and demonstrated ODOC's continued unwillingness to protect her.

30. Throughout 2023 and into 2025, Plaintiff remained housed in male units where she was subject to continued harassment, threats, and psychological deterioration. Her DOC400 profile listed no documented conflicts, and ODOC staff—including Captain King—made no effort to update it to reflect her prior assaults or known aggressors. Staff accused her of manipulating PREA, and she was disciplined for conduct resulting from her own victimization or her efforts to obtain care.

31. As of March 2025, Plaintiff remains housed at SRCI without a confirmed date for surgery. Her current housing continues to place her at serious risk of harm. She fears further assault and has no confidence that ODOC will intervene to protect her. SRCI lacks a unit capable of safely housing transgender women, and her ongoing confinement in a male facility exacerbates her gender dysphoria, depression, and PTSD.

32. Plaintiff's mental health providers have recommended a transfer to CCCF or another appropriate facility where she can be safely housed and access gender-affirming care. ODOC staff have ignored these recommendations and refused transfer without justification.

Despite two habeas actions and repeated findings that vaginoplasty is medically necessary, ODOC has failed to provide any timeline or plan for surgery, nor have they offered any alternative treatment to alleviate her suffering.

33. Plaintiff has exhausted all available internal administrative remedies. No effective institutional process remains for securing her transfer or care, and ODOC's own officials—including the TAIC and Behavioral Health Services—have repeatedly denied medically recommended and necessary interventions. Without judicial intervention, Plaintiff faces irreparable harm to her physical and psychological health.

## FIRST CLAIM FOR RELIEF

**42 U.S.C. § 1983 – Eighth Amendment – Deliberate Indifference to Serious Medical Needs (Against Defendants Roberts, Bugher, Breyman, Bajpai, Muhammad-Brown, and Persson)**

34. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

35. At all relevant times, Plaintiff was a sentenced prisoner in the custody of the Oregon Department of Corrections (ODOC) and entitled to protection under the Eighth Amendment to the United States Constitution.

36. Plaintiff has been diagnosed by ODOC mental health professionals and medical contractors as suffering from gender dysphoria, a serious medical condition recognized by the American Psychiatric Association and the World Professional Association for Transgender Health (WPATH).

37. Medical professionals, including ODOC's contract surgeon, determined that gender-affirming surgical procedures—including vaginoplasty—were medically necessary to

treat Plaintiff's gender dysphoria. Additional treatments such as facial feminization surgery and breast augmentation were also recommended.

38.     Defendants had actual knowledge of Plaintiff's diagnosis, treatment history, and the recommendations for surgical intervention. These facts were documented in her medical records, mental health charts, and grievances.

39.     Despite this knowledge, Defendants failed to provide Plaintiff with any gender-affirming surgical care. They also denied other essential accommodations, such as transfers to appropriately gendered facilities or modified housing assignments that could mitigate her symptoms.

40.     In March 2023, ODOC's Transgender and Intersex Accommodation Committee (TAIC), including Defendants Breyman, Muhammad-Brown, and Bajpai, denied Plaintiff's request for vaginoplasty despite acknowledging the severity of her gender dysphoria. Their decision was based on non-medical considerations such as disciplinary history and purported lack of "community living" experience.

41.     Defendants Roberts and Persson had final authority over specialty surgical approvals and failed to approve Plaintiff's vaginoplasty, despite clear findings of medical necessity.

42.     Defendant Bugher, as ODOC's Health Services Administrator, enforced policies and practices that categorically denied or delayed gender-affirming care. He failed to take corrective action in Plaintiff's case despite full awareness of the facts and clinical recommendations.

43. As a result of Defendants' actions and omissions, Plaintiff experienced severe emotional and psychological distress, exacerbation of her gender dysphoria, suicidal ideation, and repeated psychiatric decompensation.

44. Defendants' failure to provide medically necessary treatment constitutes deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth Amendment to the United States Constitution.

45. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against the individual-capacity defendants, and such other relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Eighth Amendment – Failure to Protect

### (Against Defendants King, Miller, and Breyman)

46. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

47. The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of those in their custody and to protect prisoners from violence at the hands of other prisoners.

48. From the outset of her incarceration, ODOC staff—including Defendants King, Breyman, and Miller—were aware that Plaintiff is a transgender woman classified by ODOC's own system as a vulnerable adult in custody (AIC).

49. Despite this classification and numerous reports by Plaintiff documenting sexual harassment, threats, and abuse, Defendants housed her in general population male units alongside cisgender male prisoners known to have assaulted or harassed her.

50. Defendant King, in his role overseeing housing assignments, repeatedly failed to ensure Plaintiff was housed safely. Despite being aware of her vulnerability, history of victimization, and repeated requests for protective placement, King consistently denied appropriate housing and exposed Plaintiff to unsafe conditions, including in November 2021 when she was assaulted by a cisgender male cellmate.

51. Captain Breyman denied Plaintiff's repeated requests for protective housing despite corroborated complaints of harassment and medical documentation of mental health deterioration and suicidality.

52. Superintendent Miller was informed of Plaintiff's repeated grievances and mental health alerts but failed to take corrective action, initiate a protective investigation, or relocate Plaintiff to a safe housing unit.

53. In March 2023, Plaintiff attempted self-harm after being celled with an individual she had previously reported for misconduct. Again, ODOC staff returned her to the same unit without any mental health follow-up or documented investigation.

54. In November 2023, Plaintiff was groped by another cellmate. She reported the assault, but staff failed to remove the aggressor, provide protective housing, or take disciplinary action.

55. Defendants took no steps to identify, track, or separate known aggressors from Plaintiff, and failed to maintain or update her conflict history in DOC systems, allowing repeated unsafe placements.

56. As a result of Defendants' inaction and disregard for Plaintiff's safety, she has suffered repeated physical assaults, psychological trauma, and a worsening of her gender dysphoria and PTSD.

57. Defendants' conduct demonstrates deliberate indifference to Plaintiff's safety and constitutes a violation of her rights under the Eighth Amendment to the United States Constitution.

58. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against the individual-capacity defendants, and such other relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Fourteenth Amendment – Equal Protection Clause

**(Against Defendants Roberts, Bugher, Breyman, Bajpai, Muhammad-Brown, Persson, and King)**

59. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

60. At all relevant times, Plaintiff was a transgender woman incarcerated in the custody of the Oregon Department of Corrections and entitled to the equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

61. Defendants were state actors acting under color of law and were responsible for decisions regarding Plaintiff's access to medical care, housing, classification, safety, and protection from harassment and assault.

62. Defendants subjected Plaintiff to disparate treatment on the basis of her transgender status, including:

> (a) Refusing to authorize medically necessary gender-affirming care such as vaginoplasty, tracheal shave, facial feminization surgery, and permanent hair removal, despite clinical recommendations;

(b) Denying her individualized review for such care based on categorical restrictions not applied to cisgender AICs;

(c) Failing to provide safety protocols and conflict tracking comparable to those provided to cisgender individuals at risk of assault;

(d) Housing her with known aggressors, ignoring her documented vulnerabilities, and failing to take reasonable steps to protect her from sexual harassment and physical assault;

(e) Retaliating against her for asserting safety-related concerns and filing grievances, in a manner not applied to similarly situated cisgender AICs.

63. These policies, practices, and decisions reflect intentional discrimination or, at minimum, arbitrary and irrational treatment of Plaintiff based on her transgender status and sex.

64. Defendants' actions were motivated by bias, hostility, or deliberate indifference toward Plaintiff's transgender identity and resulted in Plaintiff being treated less favorably than similarly situated incarcerated individuals who are not transgender.

65. Defendants' conduct lacked a legitimate penological justification and was not narrowly tailored to serve any compelling or important governmental interest.

66. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered ongoing violations of her constitutional rights, physical injury, emotional trauma, and psychological harm. She is entitled to compensatory and punitive damages under 42 U.S.C. § 1983.

67. Plaintiff also seeks declaratory and injunctive relief requiring ODOC to eliminate discriminatory exclusions in gender-affirming care and to implement equal protection-compliant safety and housing practices for transgender AICs.

## FOURTH CLAIM FOR RELIEF

## 42 U.S.C. § 1983 – First Amendment Retaliation

## (Against King, Breyman, Miller, and Oregon Department of Corrections)

68. Plaintiff engaged in constitutionally protected activity by submitting grievances, administrative complaints, and legal filings, including state habeas petitions, related to the denial of gender-affirming care, unsafe housing conditions, and mistreatment in ODOC custody.

69. Plaintiff filed multiple written grievances from 2021 through 2024, raised concerns directly with ODOC personnel, and pursued litigation, including Malheur County Case No. 24CV10812, seeking redress for ongoing violations.

70. In response, ODOC officials subjected her to a pattern of adverse actions. These included repeated denials of protective housing, refusals to authorize gender-affirming surgical care, and housing placements with known aggressors, despite prior safety alerts and clinician recommendations.

71. Specifically, after Plaintiff filed her 2023 habeas petition, TAIC and ODOC officials—including Breyman and King—denied vaginoplasty and ignored medical transfer requests, even where ODOC staff had previously affirmed her diagnosis and medical needs.

72. The actions taken by Defendants would deter a person of ordinary firmness from continuing to exercise their First Amendment rights.

73. Defendants were aware of Plaintiff's protected activity, and the close timing between her complaints and Defendants' adverse decisions supports an inference that retaliation was a motivating factor.

74. Defendants' conduct constituted unlawful retaliation in violation of Plaintiff's First Amendment rights.

75. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages against the individual-capacity defendants, and such other relief as the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

**Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq.**

**(Against Defendant Oregon Department of Corrections)**

76. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

77. Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint.

78. Title II of the Americans with Disabilities Act (ADA) prohibits discrimination against qualified individuals with disabilities by public entities, including state correctional departments.

79. At all relevant times, Plaintiff was a qualified individual with a disability as defined by the ADA. Her disabilities include gender dysphoria and post-traumatic stress disorder (PTSD), all of which substantially limit one or more major life activities.

80. Defendant Oregon Department of Corrections (ODOC) is a public entity within the meaning of the ADA and is responsible for the administration and operation of state correctional facilities, including the provision of medical and mental health services to adults in custody.

81. ODOC denied Plaintiff the benefits of its services, programs, and activities—including access to medically necessary care, safe housing, and mental health support—on the basis of her disabilities.

82. ODOC failed to reasonably accommodate Plaintiff's disabilities by: a. Denying her access to gender-affirming surgical and medical care despite clinical recommendations; b. Housing her in units that exacerbated her gender dysphoria and PTSD; c. Ignoring her medical providers' recommendations for mental health treatment and safety accommodations; d. Failing to modify housing and programming to prevent known psychological harms.

83. ODOC's actions and omissions constitute discrimination and denial of meaningful access to the benefits and services it provides to non-disabled adults in custody.

84. As a direct and proximate result of ODOC's discriminatory conduct, Plaintiff suffered serious harm, including psychiatric decompensation, physical assaults, and ongoing psychological trauma.

85. Plaintiff seeks declaratory and injunctive relief, as well as compensatory damages, attorneys' fees, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

**Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794**

**(Against Defendant Oregon Department of Corrections)**

86. Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

87. Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability in programs and activities receiving federal financial assistance.

88. Plaintiff is a qualified individual with disabilities, including gender dysphoria and PTSD, as defined by the Rehabilitation Act.

89. Defendant ODOC is a recipient of federal financial assistance and operates programs and activities covered by the Rehabilitation Act, including the provision of medical and mental health care, housing, and protective services within its correctional institutions.

90. ODOC discriminated against Plaintiff solely on the basis of her disabilities by denying her access to necessary medical treatment and accommodations and by failing to implement reasonable modifications to protect her from known risks.

91. ODOC failed to: a. Provide Plaintiff access to gender-affirming medical care consistent with her diagnosis; b. Modify housing assignments to accommodate her disabilities and ensure her safety; c. Implement recommended mental health interventions and support services; d. Protect Plaintiff from repeated harm linked to her known medical and psychological conditions.

92. These failures deprived Plaintiff of the benefits of ODOC's services, programs, and activities in violation of the Rehabilitation Act.

93. As a direct and proximate result of ODOC's discriminatory conduct, Plaintiff suffered serious and ongoing harm, including physical assault, suicidal ideation, mental health deterioration, and increased gender dysphoria.

94. Plaintiff seeks declaratory and injunctive relief, compensatory damages, attorneys' fees, and such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

A.  A declaratory judgment that Defendants' actions and omissions violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Oregon state law;

B.  Preliminary and permanent injunctive relief requiring Defendants to: a. Transfer Plaintiff to a facility that can safely house her in accordance with her gender identity, such as Coffee Creek Correctional Facility; b. Provide Plaintiff access to medically necessary gender-affirming care, including vaginoplasty and related surgical evaluations, consistent with medical standards of care; c. Implement policies and procedures to prevent further harm and ensure appropriate housing, care, and accommodations for transgender adults in custody;

C.  Compensatory damages in an amount to be determined at trial;

D.  Punitive damages against the individual defendants for their reckless and callous disregard of Plaintiff's constitutional and statutory rights;

E.  Reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988 and other applicable provisions;

F.  Pre- and post-judgment interest as allowed by law; and

G.  Such other and further relief as the Court deems just and proper.

**Plaintiff demands a trial by Jury.**

DATED: June 2, 2025

**LAW OFFICES OF DANIEL SNYDER**

*s/ John Burgess*
John Burgess, OSB No. 106498
johnburgess@lawofficedanielsnyder.com
Carl Post, OSB No. 061058
carlpost@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Attorneys for Plaintiff